NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250132-U

NO. 4-25-0132

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 4, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| VINCENT EDWARD NELSON, | ) | No. 20CF1421 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding (1) the trial court judge was not required to recuse himself under Illinois Supreme Court Rule 402(d)(2) (eff. July 1, 2012), (2) the court's denial of defendant's motion to substitute judge was not against the manifest weight of the evidence, (3) the State proved defendant violated his probation by a preponderance of the evidence, (4) the court did not improperly consider factors inherent in the offense in aggravation at sentencing, (5) defendant's prison sentence was not excessive, and (6) the court did not predetermine defendant's guilt and sentence.

¶ 2    Defendant, Vincent Edward Nelson, appeals the trial court's grant of the State's petition to revoke his probation and his sentence of 12 years' imprisonment. After failing to appear for drug-court probation, defendant entered into a plea agreement with the State under which he admitted to the allegations in the petition to revoke probation. In exchange, the State capped its sentencing recommendation at 10 years' imprisonment, which the court did not accept. On appeal, we reversed and remanded because the court failed to admonish defendant in compliance with

Illinois Supreme Court Rule 402(d)(3) (eff. July 1, 2012) that it was not bound by the cap. *People v. Nelson*, 2024 IL App (4th) 230480-U, ¶¶ 22, 26.

¶ 3 On remand, defendant moved to substitute the trial court judge, William A. Yoder, and withdrew his admission. A different judge denied the motion to substitute. The court subsequently found defendant violated his probation and again sentenced him to 12 years' imprisonment.

¶ 4 On appeal, defendant argues (1) Judge Yoder erred by failing to recuse himself on remand under Illinois Supreme Court Rule 402(d)(2) (eff. July 1, 2012), (2) the trial court erred by failing to grant defendant's motion to substitute judge, (3) the State failed to prove defendant violated his probation by a preponderance of the evidence, (4) the court improperly considered factors inherent in the offense in aggravation, (5) the sentence was excessive, and (6) the court erroneously predetermined defendant's guilt and sentence.

¶ 5 We affirm.

¶ 6 I. BACKGROUND

¶ 7 A. Initial Plea

¶ 8 In 2020, defendant was charged with residential burglary (720 ILCS 5/19-3(a) (West 2020)), alleging defendant entered a dwelling with the intent to commit a theft. Defendant later entered a guilty plea in exchange for 48 months of drug-court probation. The State provided the following factual basis for the plea:

> "[O]n December 27th of 2020, a witness neighbor of the victim, Mark Jedele and
> Shelby Jedele, reported having watched a male suspect enter the rear door of the
> Jedele residence located at 1304 Broadway Place. The male suspect carried a
> backpack that the neighbor knew belonged to Mark and Shelby. The witness

reported a description to police, and police noted when they arrived that it appeared entry was made by firing a BB gun into a glass pane of the entrance door, as there was a small BB hole remaining in the broken glass. Suspect also left a footwear impression in the snow on the porch. Police entered the residence, found open Christmas presents, a small safe which had been pried open, as well as other items that appeared to have been rummaged through.

Normal Police then stopped this defendant as he walked on Jersey Street, and [the] witness arrived and identified this defendant as the individual he saw exit the Jedele residence. The defendant wore footwear which had tread matching that that was left at the front porch of the Jedele residence. He also possessed a BB gun. The defendant also possessed a backpack that the witness identified as belonging to Mark and Shelby. And among the property inside the backpack, there was a manila envelope with the name Shelby, which contained earbuds, a Fitbit watch, and coin. It also possessed a leather strap inscribed with the name Shelby. And there was an Indiana High School state championship ring inscribed with, quote, Coach Jedele, end quote. And the Jedeles did have to replace that broken window, the cost being $72.54, the amount of restitution."

¶ 9       The trial court found defendant was a suitable candidate for drug-court probation and accepted the plea agreement.

¶ 10      Defendant paid a fine and restitution and succeeded in reaching the second phase of the program before relapsing and failing to appear for court, which resulted in a warrant being issued for his arrest. The State filed a petition to revoke defendant's probation. However, after defendant's arrest, it was revealed defendant had sought treatment. Defendant expressed a desire

to remain on probation, and the trial court dismissed the petition to revoke his probation.

¶ 11                    B. Admission to Probation Violation and First Sentencing

¶ 12            Within the month, a second warrant was issued for defendant's arrest for again failing to appear for court. The State filed a second petition to revoke his probation, alleging, in part, defendant violated his probation by failing to appear in court on August 25, 2022.

¶ 13            In January 2023, defendant admitted to failing to appear in court on August 25, 2022. In exchange for defendant's admission, the State struck other allegations from the petition and agreed to cap its sentencing recommendation to 10 years' imprisonment.

¶ 14            At the time of the admission, the following colloquy occurred:

                "THE COURT: Okay. So [defendant], this plea agreement contemplates that you would be admitting paragraph 3D1 of the second petition to revoke your probation. This is *** in essence, a blind plea, or a plea with no agreement, other than the State is agreeing to cap its recommendation to no more than ten years [imprisonment]. Is that your understanding of what you're doing today?

                [DEFENDANT]: Yes, Your Honor."

¶ 15            The trial court explained the allegations contained in the petition to revoke and the basis for defendant's admission. The court advised defendant of the possible penalties as follows:

                "THE COURT: Residential burglary is a Class 1 felony offense. A Class 1 felony is punishable by a minimum period of 4 years [of imprisonment] and a maximum of 15 years [of imprisonment]. That would be followed up by a period of one year of mandatory supervised release. You *** cannot be placed on probation for this offense. It's a mandatary prison sentence. You were placed on drug court probation, which is an exception to that rule. So when you're resentenced

- 4 -

on this offense, is—is defense *** going to be seeking a second chance at drug court in your request?

[DEFENSE COUNSEL]: Your Honor, I don't have that information. I'm standing in for [another attorney] on the plea. I don't know *** about the discussions as to whether she's seeking that or not.

THE COURT: Okay. So [defendant], drug court probation is technically a possible outcome of this case, as I guess would be [Treatment Alternatives for Safe Communities] probation. But no other probationary sentence is possible in this case. Does the State have anything to add to that?

[THE STATE]: No, Your Honor.

THE COURT: The plea agreement contemplates that any statutory sentence could be imposed, but that the State agrees to cap its recommendation at 10 years [of imprisonment]. So is that your understanding of what this plea agreement calls for?

[DEFENDANT]: Yes, Your Honor.

THE COURT: And do you understand the possible range of penalties pursuant to the statute?

[DEFENDANT]: Yes, Your Honor."

The court also asked defendant whether anybody promised him anything other than the State was going to recommend a cap of no more than 10 years' imprisonment. Defendant responded, "No."

¶ 16        At the sentencing hearing, the State asked that defendant be sentenced to 10 years' imprisonment. The presentence investigation report (PSI) showed defendant had previously been convicted in 2003 of possession of a controlled substance and was initially sentenced to probation,

but that probation was later terminated after defendant violated probation. Defendant also was previously convicted of possession of cannabis in 2005 and burglary in 2007. Defendant's probation for the burglary conviction was later revoked and, after defendant was paroled, he was returned to custody on a parole violation. Defendant also was convicted of theft in 2009, operating an uninsured vehicle in 2011, and illegal transportation of liquor in 2012. Defendant had nine drug-court sanctions and five incentives. The PSI stated defendant had expressed his motivation to change but that his regressing in substance use and willingness to engage with treatment were concerns for sustained recovery. Defendant was diagnosed with alcohol use disorder, severe.

¶ 17 Defendant presented evidence he had seven children he helped support and care for. He had paid restitution and had spent a period of his drug-court probation in compliance. Defendant had been employed, and he provided written statements expressing remorse. Defendant asked to be resentenced to drug-court probation or, in the alternative, the statutory minimum sentence of four years.

¶ 18 The trial court discussed various factors in aggravation and mitigation and found defendant was no longer a suitable candidate for drug-court probation due to his failure to take full advantage of his prior opportunities. During its comments, the court stated:

"This offense, residential burglary, the legislature has obviously deemed it a forcible felony and offense that is significant in light of the fact that they made it non-probationable. The factual basis in this case seems especially aggravating, not necessarily for purposes of a sentencing hearing, but in particular, *** breaking into somebody's home and stealing an heirloom that cannot be replaced, that being a State Championship ring, apparently of a coach is my only interpretation of that, would seem to me to be an extremely personal violation of somebody's private

- 6 -

space, but I'm not going to take those factors into consideration."

¶ 19 The trial court stated its sentence was based on defendant's prior record, statutory factors in aggravation and mitigation, and "other relevant factors that the Court believes appropriate." The court then sentenced defendant to 12 years' imprisonment, and the following colloquy occurred:

> "[DEFENSE COUNSEL]: Your Honor, in the [petition to revoke] agreement that was admitted before the Court on January 5th we agreed to a cap of 10 years.
>
> THE COURT: Yes.
>
> THE STATE: The State agreed to the 10 years.
>
> THE COURT: That is an agreement as to a recommendation. It does not bind the Court."

¶ 20 Defendant moved to withdraw his admission to the probation violation and to reconsider his sentence, alleging he did not enter the admission knowingly and voluntarily and failed to understand the possible consequences of his admission. The trial court denied the motion. In doing so, the court stated, "The Court is not bound by the recommendation of the parties. Those are just that. They are recommendations to the Court, and the Court can impose what it believes to be an appropriate sentence in a particular case." The court then further stated:

> "In this case, the Court considered all factors, statutory, non-statutory, any relevant factor. I placed all of that on the record when I imposed a sentence. I did mention during my comments that there was a one-of-a-kind ring—I don't know if it was a championship of some sort. I don't recall the significance of the ring, other than it was a personal heirloom, I believe a college of maybe a championship coach.

I don't recall the specifics of it, but I did mention that because it's one of the factors in this case that the Court considered. Also the time of the year. Any other relevant factor I didn't give it undue weight to any one factor or too little weight to any other. I just considered the factors that appeared to the Court to be relevant to this proceeding and then imposed the sentence that the Court believed appropriate based on all factors and not one or two factors."

Defendant appealed.

¶ 21                    C. Appeal, Remand, and Second Sentencing

¶ 22        On appeal, we determined defendant was not advised, as required by Rule 402(d)(3), that the trial court was not concurring with the State's sentencing cap, nor did the court advise defendant it was not bound by the recommendation. *Nelson*, 2024 IL App (4th) 4230480-U, ¶¶ 22, 26. Therefore, we held defendant was denied due process. *Id.* ¶ 26. Accordingly, we reversed defendant's sentence, reversed the court's order denying defendant leave to withdraw his admission, and remanded with directions to allow defendant to plead anew. *Id.* ¶ 28.

¶ 23        On remand, defendant withdrew his admission to violating his probation. Defendant filed a motion to substitute Judge Yoder for cause, alleging Judge Yoder, in prior proceedings, expressed his position as to what the outcome of this case should be, which exceeded the recommendations of the parties. Defendant also alleged there were issues regarding Judge Yoder's determinations made at sentencing, the appellate litigation was intense, and Judge Yoder was prejudiced against him. Defendant did not file a motion requesting that Judge Yoder recuse himself.

¶ 24        A hearing on the motion was held before Judge Jason Chambers. Defendant argued the record showed Judge Yoder was biased against him because Judge Yoder wrongly considered

the theft of a championship ring as a factor in aggravation, failed to consider defendant's family, remorse, rehabilitation, and desire for treatment in mitigation, and sentenced defendant to a term beyond the cap recommended by the State. Defendant also argued the "intensity of the appellate litigation" provided evidence of bias. Defendant argued that, during oral argument on appeal, a judge on the panel took the attorneys and the trial court to task, stating, in part, that, " 'The cold record actually showed that no one in the courtroom knew what the hell they were doing.' "

¶ 25     Judge Chambers denied the motion, stating defendant had not met his burden of showing Judge Yoder was biased. Judge Yoder then presided over the new hearing on the State's second petition to revoke defendant's probation.

¶ 26     At the hearing on the petition to revoke defendant's probation, probation officer, Emilio Fischer, testified defendant was placed on drug-court probation on April 26, 2022, and was required to provide alcohol and drug screens. Fischer testified defendants on drug-court probation receive text notifications of their court dates. If a text message to a defendant is not delivered, the probation officer is notified. Referring to defendant's probation records, Fischer testified defendant violated his probation by failing to provide a required drug screen on August 20, 2022. Defendant had shown up for the screen but was unable to provide a sample. Defendant was informed of that violation. Defendant then did not appear in court on August 25, 2022. Fischer testified he did not have specific documentation as to whether defendant was "directly notified" to report for court.

¶ 27     The trial court took judicial notice of defendant's court file, including a docket entry from August 25, 2022, stating, "Hearing Held. Defendant does not appear after notice." The record showed defendant was arrested on a warrant on November 23, 2022. The court also admitted into evidence written statements of defendant that had been attached to the PSI for defendant's first sentencing hearing. In those statements, defendant admitted to alcohol abuse and stated, "During

- 9 -

the 2 ½ months I was in the wind I found myself in the emergency room twice."

¶ 28    The trial court found defendant had violated his probation. The court stated Fischer testified about the practice of the drug-court officers as it related to defendants being requested to take drug screens and the ramifications if they failed or refused to give those drug screens. The court found the evidence indicated defendant reported for a drug screen on August 20, 2022, and was unable to give a screen, which was a violation of his probation. The court noted that, while Fischer was unable to state that defendant received verbal notice of his court date, the testimony showed the text notice would have gone out. In addition, the docket sheet showed defendant failed to appear on August 25, 2022, after notice. The court further noted defendant's statements. Thus, the court found the State proved by a preponderance of the evidence that defendant failed to appear in court on August 25, 2022, in violation of his probation.

¶ 29    On January 27, 2025, a sentencing hearing was held. The PSI was amended to add that, on January 22, 2025, defendant committed a major rule violation while incarcerated by possessing contraband, which was discovered when his jail cell was searched and two "half pills" were found in the lid of his toothpaste container.

¶ 30    The State asked the trial court to sentence defendant to 12 years' imprisonment. The State argued defendant damaged property and was compensated for the offense, had a criminal history, and failed at rehabilitation. Defense counsel argued the offense was nonviolent, defendant had accepted responsibility for his addiction, and there would be hardship to defendant's children if he was incarcerated. Defendant gave a statement in allocution, referring to his serious addiction and also to his children.

¶ 31    The trial court questioned the State and defense counsel as to whether the parties agreed residential burglary was a forcible felony. Defense counsel stated that was a statutory title

- 10 -

given to it, but he thought there were "nuances to it." The court asked, "[I]n the statute where it says [forcible] felony, below it, along with a bunch of other offenses leaves residential burglary. Do you agree?" Defense counsel responded, "I agree."

¶ 32       The trial court stated it considered the updated PSI, the exhibits filed at the first and current sentencing hearings, defendant's statement, the statutory factors in aggravation and mitigation, and "all relevant factors that a Court should consider when imposing a sentence in a very serious felony case." The court remarked the case involved a residential burglary "where a one-of-a-kind family heirloom was taken." The court further stated:

> "[R]esidential burglary has been categorized as a [forcible] felony because of the potential for serious harm that befalls anybody that may happen to be home when a person violates the sanctity of *** their individual residence. That's why it's a Class 1 felony offense as opposed to a regular burglary where somebody breaks into a business or some other structure, or car. Those being lesser offenses because of the lesser likelihood that somebody might be present *** and be put at risk. And the [legislature] may have had other reasons beyond those for categorizing residential burglary as a [forcible] felony and making it a nonprobationable offense."

¶ 33       The trial court noted residential burglary was usually a nonprobationable offense unless the defendant was sentenced to drug-court probation, among other exceptions. The court stated defendant was given an opportunity to complete drug-court probation but "had all sorts of problems" and was removed from the program.

¶ 34       The trial court also noted the effect of defendant's substance abuse on defendant's family, stating:

"The defendant professes to be a dedicated parent to his children. And as pursuant to his family impact statement, said *** there'll be significant harm to my family if I'm not allowed to be around them, my children. I think the exact opposite could be true as well. When an untreated drug addict is around their child, drug and/or alcohol, the children obviously observe that. They're much more observant than people give them credit. And I think when you watch a parent, someone you look up to, in the throes of drug addiction, *** it makes it more likely that the child is going to experience emotional *** distress and/or be addicted to drugs, be more likely to use drugs themselves. In addition, the psychological impact on a child is also significant. And here we have a defendant who at the time this offense was committed, was indisputably in the throes of serious addiction. So he was given an opportunity through drug court to address that addiction. He was given an opportunity under a unique form of probation, where its wraparound services provided for you, to help you address the need that's driving you down the wrong path, that being addiction. Again, the defendant was unsuccessful at drug court.

Beyond that, this was not the defendant's first attempt at drug court. Back in 2007, out of a 2006 case, the defendant was placed into drug court. And in 2007, his probation was revoked and he was sentenced to three years in the Department of Corrections as a result of noncompliance with the drug court treatment team and the requirements. That drug court term coincides with the beginnings of the defendant's—the development of the building of his family. That was 2007. If he had any children at the time, I would think maybe one or two, they were very young and *** you would think would provide him great incentive to address his drug

addiction. Nonetheless, he [was] not successful in pursuing the opportunity that was *** provided to him by the drug court team the first time he was there."

¶ 35 The trial court found defendant's imprisonment was necessary for the protection of the public and that probation would deprecate the seriousness of the offense. The court then sentenced defendant to 12 years' imprisonment.

¶ 36 Defendant filed a motion to reconsider his sentence, alleging the trial court erred when it denied his motion for substitution of judge, the sentence was excessive, and the court considered several factors inherent in the offense: (1) residential burglary as a forcible felony, (2) the nature of an item taken, and (3) that defendant received compensation for the crime because of the items taken.

¶ 37 At the hearing on the motion, the trial court stated it did not recall commenting on defendant receiving compensation for his crime. The court stated, if it did, it gave minimal weight to it because it because it was an element of the offense. The court stated it had addressed the issue of a forcible felony in response to defense counsel's argument the crime was nonviolent. The court stated, "It was more of a point of clarification than anything else." Regarding the family heirloom, the court stated, "I think I might have touched on it during my summation. But again, it was in response to argument set forth by the defense as a point of clarification." The court then stated it had considered the appropriate factors in aggravation and mitigation and disregarded factors that a court should not consider. Thus, the court denied the motion.

¶ 38 This appeal followed.

¶ 39                                    II. ANALYSIS

¶ 40 On appeal, defendant argues (1) Judge Yoder erred by failing to recuse himself on remand under Rule 402(d)(2), (2) the trial court erred by failing to grant defendant's motion to

- 13 -

substitute judge, (3) the State failed to prove defendant violated his probation by a preponderance of the evidence, (4) the court improperly considered factors inherent in the offense in aggravation, (5) the sentence was excessive, and (6) the court erroneously predetermined defendant's guilt and sentence.

¶ 41                                    A. Failure to Recuse

¶ 42        Defendant first argues Judge Yoder had a duty to *sua sponte* recuse himself on remand under Rule 402(d)(2). Defendant also argues that, to the extent he could be determined to have forfeited the issue by not asking Judge Yoder to recuse himself, his counsel was ineffective for failing to raise the issue.

¶ 43        Here, defendant not only failed to request Judge Yoder recuse himself, defendant also failed to raise the matter in a posttrial motion. It is well settled that to preserve an issue for appellate review, a defendant must make an objection to the purported error during the trial and raise it again in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Thus, here, defendant forfeited the issue by failing to raise it.

¶ 44        Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Cathey*, 2012 IL 111746, ¶ 23. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010). When addressing a claim of ineffective assistance of counsel, appellate courts first consider whether the defendant has established a clear or obvious error. Absent a clear or obvious error, a theory of ineffective

assistance does not afford the defendant any relief. *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 78.

¶ 45        Illinois Supreme Court Rule 402A (eff. Nov. 1, 2003) governs admissions or stipulations in proceedings to revoke probation, conditional discharge, or supervision. By operation of Rule 402A(d), specific paragraphs of Rule 402, including Rule 402(d), which governs proceedings on guilty pleas, also apply to proceedings on petitions to revoke probation. Ill. S. Ct. R. 402A(d) (eff. Nov. 1, 2023); Ill. S. Ct. R. 402 (eff. July 1, 2012).

¶ 46        Rule 402(d)(2) provides:

> "If a tentative plea agreement has been reached by the parties which contemplates entry of a plea of guilty in the expectation that a specified sentence will be imposed or that other charges before the court will be dismissed, the trial judge may permit, upon request of the parties, the disclosure to him or her of the tentative agreement and the reasons therefor in advance of the tender of the plea. At the same time the trial judge may also receive, with the consent of the defendant, evidence in aggravation or mitigation. The judge may then indicate to the parties whether he or she will concur in the proposed disposition; and if the judge has not yet received evidence in aggravation or mitigation, he or she may indicate that his or her concurrence is conditional on that evidence being consistent with the representations made. If the judge has indicated his or her concurrence or conditional concurrence, the judge shall so state in open court at the time the agreement is stated as required by paragraph (b) of this rule. If the defendant thereupon pleads guilty, but the trial judge later withdraws his or her concurrence or conditional concurrence, the judge shall so advise the parties and then call upon

the defendant either to affirm or to withdraw his or her plea of guilty. If the defendant thereupon withdraws his or her plea, the trial judge shall recuse himself or herself." Ill. S. Ct. R. 402(d)(2) (eff. July 1, 2012).

¶ 47 Rule 402(d)(3) states:

"If the parties have not sought or the trial judge has declined to give his or her concurrence or conditional concurrence to a plea agreement, the judge shall inform the defendant in open court at the time the agreement is stated as required by paragraph (b) of this rule that the court is not bound by the plea agreement, and that if the defendant persists in his or her plea the disposition may be different from that contemplated by the plea agreement." Ill. S. Ct. R. 402(d)(3) (eff. July 1, 2012).

¶ 48 Defendant's argument centers around the portion of Rule 402(d)(2) stating that if a trial judge later withdraws a concurrence or conditional concurrence, the judge shall so advise the parties, call upon the defendant either to affirm or to withdraw the plea of guilty, and, if the defendant withdraws the plea, recuse himself or herself. Defendant contends that portion of Rule 402(d)(2) applies here. We disagree.

¶ 49 Rule 402(d)(2) requires the judge to recuse himself or herself when he or she has conditionally concurred in a negotiated plea but thereafter withdraws that conditional concurrence and the defendant pleads not guilty. *People v. Price*, 41 Ill. App. 3d 1059, 1060 (1976). Whether Rule 402(d)(2) requires a trial judge to recuse himself or herself depends on whether the communications between the parties and the trial judge amount to a conditional concurrence. *Id.* If the trial judge did not make a conditional concurrence, he or she is not required to recuse himself or herself from the case. *Id.*

¶ 50 The mere fact a trial judge refuses to make a ruling until he or she has heard

evidence cannot be considered a conditional concurrence. See *id.* at 1061. Instead, the requirement of recusal applies in circumstances when a judge is given representations by counsel for both parties as to the facts in aggravation or mitigation of a negotiated sentence, but no actual evidence is produced. In such circumstances, the trial judge necessarily relies on counsel's representations in reaching his or her decision and may conditionally concur pending later verification of those representations. *Id.* If later evidence establishes additional or different evidence in aggravation or mitigation of the sentence than that represented to the trial court by counsel, the trial judge may withdraw the conditional concurrence, and if the defendant changes his or her plea to not guilty, the judge then must recuse himself or herself. See *id.*

¶ 51    Here, Judge Yoder did not make a conditional concurrence to the State's recommended cap. Instead, Judge Yoder waited until the evidence was heard to decide not to accept the cap. There was no conditional concurrence.

¶ 52    Defendant essentially argues this court's reversal based on the trial court's failure to inform him that it was not bound by the cap was the same as a conditional concurrence. It was not. Had the court correctly informed defendant it was not bound by the cap, defendant would remain in the same situation as he is now. Defendant could have chosen to admit the probation violation or require the State to prove it. The court, without conditionally concurring to that cap, would then have gone on to hear evidence at sentencing and could have decided to sentence defendant to a term of imprisonment in excess of the recommended cap.

¶ 53    We specially noted the lack of concurrence with the cap in the first appeal. *Nelson*, 2024 IL App (4th) 4230480-U, ¶ 22. We then reversed based on the trial court's failure to admonish defendant it was not bound by the cap because the court had not conditionally concurred with the cap, making such an admonition required under Rule 402(d)(3). *Id.* Our act of reversing

remedied the situation by allowing defendant to make an informed decision as to whether to admit the probation violation or withdraw the admission knowing there was a lack of a concurrence to the cap. The court's failure to fully admonish in the first proceeding and our remand did not transform a nonexistent concurrence into a concurrence requiring recusal under Rule 402(d)(2). Accordingly, we find no error. Because we find no error, we also do not find ineffective assistance of counsel.

¶ 54                                B. Motion to Substitute

¶ 55        Defendant next argues the trial court erred by denying his motion to substitute Judge Yoder.

¶ 56        Section 114-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-5 (West 2024)) authorizes a criminal defendant to seek substitution of the trial judge for cause on the ground the judge is so prejudiced against him that he cannot receive a fair trial. To be entitled to substitution of a judge for cause, the party seeking substitution must "establish not merely the possibility of prejudice, but also that prejudice tangibly exists." *People v. Mercado*, 244 Ill. App. 3d 1040, 1045 (1993). "A defendant who seeks a substitution of judge for cause bears the burden of establishing actual prejudice." *People v. Klein*, 2015 IL App (3d) 130052, ¶ 85. "A defendant's right to a substitute judge is not absolute, but requires substantiation to ensure that the claim of prejudice is not frivolously made." *People v. Kluppelberg*, 257 Ill. App. 3d 516, 535 (1993). "Absent a showing of animosity, ill will, or distrust toward [the] defendant, the judge will not be disqualified." *Id.* at 536. "The lack of impartiality of a trial judge even under extreme provocation cannot be presumed." *People v. Smeathers*, 297 Ill. App. 3d 711, 716 (1998).

¶ 57        " '[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality motion.' " *People v. Damnitz*, 269 Ill. App. 3d 51, 55-56 (1994) (quoting *Liteky v.*

*United States*, 510 U.S. 540, 555 (1994)). Allowing an evidentiary ruling, whether correct or not, to be a basis for a motion to substitute a judge for cause would encourage litigants to make such a motion whenever they are subjected to an unfavorable ruling. *Id.* at 56. "Needless to say, this court will not give its imprimatur to a procedure that would result in the wholesale transfer of cases to 'neutral' judges for review of every contested ruling." *Id.* "Given the adequate opportunity for review of evidentiary rulings provided both by post-trial proceedings and by appellate scrutiny, such a radical departure from current practice is unjustified and ill-advised." *Id.* Thus, the fact that a judge has previously ruled against a defendant is not a basis for finding the judge is prejudiced. See *People v. Patterson*, 192 Ill. 2d 93, 131-32 (2000) (citing *People v. Vance*, 76 Ill.2d 171, 178 (1979)).

¶ 58        We will not disturb a finding on a motion for substitution of judge unless that finding is against the manifest weight of the evidence. *Mercado*, 244 Ill. App. 3d at 1047. A decision is against the manifest weight of the evidence where the opposite conclusion is clearly evident or the decision is unreasonable, arbitrary, or not based on the evidence presented. *People v. Morgan*, 2025 IL 130626, ¶ 21.

¶ 59        Here, the bases for defendant's motion to substitute Judge Yoder were primarily based on Judge Yoder's previous adverse rulings. Defendant argued the record showed Judge Yoder weas biased against him because Judge Yoder wrongly considered the theft of a championship ring as a factor in aggravation, failed to consider defendant's family, remorse, rehabilitation, and desire for treatment in mitigation, and sentenced defendant to a term beyond the cap recommended by the State. Those issues concerned legal determinations made by Judge Yoder in considering the facts of defendant's case. That Judge Yoder's decisions were adverse to defendant or that defendant disagreed was insufficient to show Judge Yoder had a personal bias

against defendant. Further, as we discuss later when addressing defendant's sentence, we find no error in Judge Yoder's rulings.

¶ 60        Defendant also argued the "intensity of the appellate litigation" provided evidence of bias. Defendant argued that, during oral argument on appeal, a judge on the panel took the attorneys and the trial court to task, stating, in part, that, " 'The cold record actually showed that no one in the courtroom knew what the hell they were doing.' " That comment or arguments made on appeal do not reflect any determination that Judge Yoder had a personal bias against defendant. Instead, comments by this court and the reversal in the first appeal merely illustrate that legal errors were present. Thus, the court's denial of the motion to substitute was not unreasonable, arbitrary, or not based on the evidence, and the opposite conclusion is not clearly apparent. Accordingly, the denial of the motion to substitute was not against the manifest weight of the evidence.

¶ 61        C. Sufficiency of the Evidence of the Probation Violation

¶ 62        Defendant contends the State failed to prove the probation violation by a preponderance of the evidence because Fischer lacked personal knowledge and relied on hearsay when he testified defendant was informed of his court date and failed to appear. Defendant also argues the trial court wrongly relied on his previous statements he abused alcohol and was "in the wind" for over two months because those statements were made in connection with plea negotiations in a reversed proceeding.

¶ 63        In a probation revocation proceeding, the State is required to prove a violation of a previously imposed condition of probation. *People v. Williams*, 303 Ill. App. 3d 264, 267 (1999); 730 ILCS 5/5-6-4(c) (West 2024). A violation of a single condition of probation is sufficient to warrant revocation. See *In re Seth S.*, 396 Ill. App. 3d 260, 274 (2009). The proceeding is civil, and proof of a probation violation need only be shown by a preponderance of the evidence. *People*

*v. Woznick*, 278 Ill. App. 3d 826, 828 (1996). " 'A preponderance of the evidence is evidence that renders a fact more likely than not.' " *People v. Brown*, 229 Ill. 2d 374, 385 (2008) (quoting *People v. Urdiales*, 225 Ill. 2d 354, 430 (2007)). A trial court's finding of a probation violation will not be overturned unless it is against the manifest weight of the evidence. *Williams*, 303 Ill. App. 3d at 267.

¶ 64    We first note defendant forfeited issues concerning hearsay and reliance on defendant's written statements. Defendant did not object to the trial court's consideration of those factors, did not include them in his posttrial motion, and does not argue on appeal that plain error or ineffective assistance of counsel applies. Thus, those matters are forfeited.

¶ 65    In any event, even if we were to disregard those matters, the State still proved by a preponderance of the evidence that defendant violated his probation. The trial court noted Fischer testified about probation procedures and how defendant would have been notified by text message of the court hearing. The trial court also took judicial notice of court records stating defendant failed to appear with notice. Defendant takes issue with the adequacy of that evidence, noting the court records consisted of merely a docket entry. However, at a probation revocation hearing, the court is "entitled to draw reasonable inferences and reach conclusions therefrom." *People v. Bonney*, 251 Ill. App. 3d 921, 924 (1993).

¶ 66    Here, while Fischer stated he did not know if defendant was personally notified of the court date and stated he was relying on records, Fischer testified about the procedure to send a text notification. When that is coupled with the docket entry stating defendant failed to appear with notice, the trial court could reasonably infer it was more likely than not that defendant was informed of the court date via the regular text-message procedure and then failed to appear. Thus, the court's determination the State proved the probation violation by a preponderance of the

evidence was not against the manifest weight of the evidence.

¶ 67                    D. Consideration of Factors Inherent in the Offense

¶ 68          Defendant argues the trial court improperly considered factors inherent in the offense when sentencing him, resulting in an improper double enhancement. In particular, defendant argues the court wrongly considered in aggravation that residential burglary was a forcible felony and that a family heirloom was taken.

¶ 69          Generally, the trial court has broad discretion in fashioning an appropriate sentence in criminal cases. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 64. However, the question of whether a court relied on an improper factor at sentencing is a question of law that we review *de novo*. *Id.* ¶ 65. "[A] trial judge may not consider an improper factor in aggravation when sentencing a defendant because such consideration clearly affects that defendant's fundamental right to liberty." *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18.

¶ 70          "A person commits residential burglary when he or she knowingly and without authority enters or knowingly and without authority remains within the dwelling place of another, or any part thereof, with the intent to commit therein a felony or theft." 720 ILCS 5/19-3(a) (West 2020).

¶ 71          "A double enhancement occurs when (1) a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence *** or (2) the same factor is used twice to elevate the severity of the offense itself." (Internal quotation marks omitted.) *Hibbler*, 2019 IL App (4th) 160897, ¶ 66. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. The defendant bears the burden to

affirmatively establish the sentence imposed was based on an improper factor. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 103. A sentence will not be reversed unless it is evident the trial court relied upon an improper factor. *Id.*

¶ 72 When announcing its sentencing decision, the trial court is not required to refrain from any mention of the factors that constitute elements of an offense, and the mere reference to the existence of such factors is not reversible error. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 22. "Sentencing hearings do not occur in a vacuum, and the duty to impose a fair sentence entails an explanation of the court's reasoning in the context of the offenses of which a defendant has been convicted." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 15. Although elements inherent in the offense are off-limits as aggravating factors, the sentencing judge cannot be expected to ignore factors relevant to a sentencing decision. See *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986).

¶ 73 "While a trial court may not consider a factor inherent in the offense in aggravation, it is appropriate to consider the degree and gravity of the defendant's conduct." *People v. Jeffers*, 2022 IL App (2d) 210236, ¶ 25. Indeed, the seriousness of the offense is the most important factor in determining an appropriate sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. It is also appropriate for a court to consider in aggravation that the defendant's conduct caused or threatened serious harm. 730 ILCS 5/5-5-3.2(a)(1) (West 2024). Thus, in imposing a sentence, the trial court may consider the nature and circumstances of the offense. *People v. Gramo*, 251 Ill. App. 3d 958, 971 (1993).

¶ 74 Here, the full context of the trial court's comments at sentencing make clear the court considered the matters defendant raises solely in terms of the seriousness of the offense. In imposing the sentence, the court inquired with counsel as to whether residential burglary was a forcible felony. During sentencing, the court referred to the crime as a forcible felony when

discussing the seriousness of the offense and stating that it was nonprobational. That context does not show the court took the designation of the crime as forcible felony into consideration as a factor in aggravation. Instead, the court was commenting on how the offense was so serious that it could not sentence defendant to probation except under certain circumstances.

¶ 75 Likewise, when referring to the item taken, at the first sentencing hearing, the trial court noted it was a family heirloom, taken around the holidays. While the court made conflicting statements as to whether it was a factor it considered during the first sentencing hearing, its comments in full showed it considered the theft of a family heirloom as a reflection of the seriousness of the offense. At the second hearing, the court remarked only in passing that the case involved a residential burglary "where a one-of-a-kind family heirloom was taken." We do not find that passing reference reversible error. See *Brown*, 2018 IL App (1st) 160924, ¶ 22.

¶ 76 Further, at the hearing on the motion to reconsider sentence, the trial court confirmed it did not improperly consider as factors in aggravation the designation of the crime as a forcible felony or the type of item taken. At that hearing, the court stated it had addressed the issue of a forcible felony in response to defense counsel's argument the crime was nonviolent. The court stated, "It was more of a point of clarification than anything else." Regarding the family heirloom, the court stated, "I think I might have touched on it during my summation. But again, it was in response to argument set forth by the defense as a point of clarification." The court then stated it had considered the appropriate factors in aggravation and mitigation and disregarded factors that a court should not consider.

¶ 77 In sum, our review of the trial court's findings reveals the court relied most heavily on the factors of defendant's criminal history, his failures at rehabilitation, and that a lengthy sentence was necessary to protect the public. Although the court did mention the crime was

designated as a forcible felony and defendant stole a family heirloom, the record does not demonstrate that consideration of those factors had any real bearing on the length of sentence imposed, and the court was appropriately describing the nature of the offense defendant committed and the seriousness of the crime. See *Gramo*, 251 Ill. App. 3d at 971.

¶ 78    Finally, we note defendant also alleged in his posttrial motion the trial court wrongly considered that he received compensation for his crime. However, he does not argue that factor on appeal, and the record does not reflect the court took that factor into consideration.

¶ 79                                E. Excessive Sentence

¶ 80    Defendant also contends the trial court abused its discretion in imposing the 12-year sentence by failing to consider or properly weigh factors in mitigation, resulting in a sentence that was disproportionate to the nature and circumstances of the offense.

¶ 81    "The legislature sets forth by statute the range of permissible sentences for each class of criminal offense." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A reviewing court affords great deference to a trial court's sentencing judgment because, "having observed the defendant and the proceedings, [it] is in a far better position to consider such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits than a reviewing court, which must rely on a 'cold' record." *People v. Little*, 2011 IL App (4th) 090787, ¶ 24. A sentence that falls within the applicable statutory limits is reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54).

¶ 82    Here, defendant challenges his sentence for residential burglary, a Class 1 felony.

720 ILCS 5/19-3(a), (b) (West 2020). On that charge, defendant was subject to a term of not less than 4 years and not more than 15 years in prison. 730 ILCS 5/5-4.5-30 (West 2024). Because defendant's sentence was within the permissible range, we presume the sentence was proper and review it for an abuse of discretion. See *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104.

¶ 83    Here, the trial court did not abuse its discretion in imposing a 12-year term of imprisonment. While defendant points to various statements by the court to argue it failed to consider or give appropriate weight to various mitigating factors, the court expressly stated it considered the factors in aggravation and in mitigation and weighed them against the seriousness of the offense, defendant's criminal history, defendant's lack of rehabilitation, and the need to protect the public. The court was not required to afford greater weight to mitigating factors than to the severity of the offense. See *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). Nor does the presence of mitigating factors require a minimum sentence. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. "Where mitigating evidence is presented to the trial court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it." *Sauseda*, 2016 IL App (1st) 140134, ¶ 19.

¶ 84    Defendant particularly takes issue with the trial court's reference to the possible negative effect of his alcohol addiction on his children, arguing there was a lack of evidence his addiction harmed his children. He also argues the court failed to consider his support for his children in mitigation. But the court's discussion made clear it was giving little weight to defendant's argument concerning his care and support for his children in light of his previous crimes and failures at rehabilitation. The record is clear that defendant had a significant criminal history and failed attempts at rehabilitation, despite having children he was responsible for helping to support and care for. The court was entitled to consider that and weigh it against defendant.

¶ 85 Our review is limited to determining whether the trial court abused its discretion. Although defendant insists the court abused its discretion, his argument is essentially nothing more than a request for us to reweigh the sentencing factors, which we will not do. "A reviewing court does not reweigh the factors involved in a trial court's sentencing decision." *People v. Pippen*, 324 Ill. App. 3d 649, 653 (2001). On this record, we cannot say defendant's sentence was greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. Accordingly, the court did not abuse its discretion in sentencing defendant to 12 years' imprisonment.

¶ 86 F. Predetermination of Guilt and Sentence

¶ 87 Finally, defendant contends the trial court improperly predetermined his guilt and sentence, denying him due process. The basis for his argument is that because the court resentenced him to 12 years' imprisonment and made other rulings in the first proceeding that were adverse to him, that it must have predetermined his guilt and sentence. He argues that, to the extent he forfeited the issue, plain error applies.

¶ 88 As previously stated, it is well settled that to preserve an issue for appellate review, a defendant must make an objection to the purported error during the trial and raise it again in a posttrial motion. *Enoch*, 122 Ill. 2d at 186. Furthermore, catchall arguments in posttrial motions do not preserve unspecified claims of error on appeal. *People v. Pace*, 225 Ill. App. 3d 415, 432 (1992). The failure to preserve an issue for appeal results in its forfeiture. *People v. Sebby*, 2017 IL 119445, ¶ 48.

¶ 89 Here, defendant argues he preserved the issue by raising the denial of his motion to substitute Judge Yoder in his motion to reconsider sentence. However, while defendant alleged Judge Yoder had expressed a position as to what the outcome of the case should be in the motion

to substitute, that motion occurred before any determination of guilt or a second sentence was made, and defendant did not raise the specific issue in his posttrial motion. Accordingly, we find defendant has forfeited the issue. However, defendant also argues plain error applies.

¶ 90        The plain-error doctrine allows a reviewing court to consider a forfeited error affecting substantial rights in two circumstances.

"(1) when a clear and obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Moon*, 2022 IL 125959, ¶ 20.

¶ 91        Our first step in the plain-error analysis is to determine whether any error occurred at all. *People v. Eppinger*, 2013 IL 114121, ¶ 19. "If error did occur, we then consider whether either prong of the plain-error doctrine has been satisfied." *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31. Making this determination requires a " 'substantive look' " at the purported error. *People v. Johnson*, 208 Ill. 2d 53, 64 (2003) (quoting *People v. Keene*, 169 Ill. 2d 1, 17 (1995)). If no error occurred, the principles of forfeiture apply. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 92        Trial judges are presumed to be impartial, and the party challenging the judge's alleged impartiality bears the burden of overcoming this presumption. *People v. Romero*, 2018 IL App (1st) 143132, ¶ 96. "Something more" than an unfavorable result toward the defendant is required to demonstrate judicial bias, which includes "a showing of animosity, hostility, ill will, or distrust towards [a] defendant." (Internal quotation remarks omitted.) *People v. Rademacher*,

2016 IL App (3d) 130881, ¶ 47. Further, "harsh criticism, based on the particular facts of a defendant's case, does not constitute any sort of evidence of prejudice derived from personal bias." *Id.* ¶ 48.

¶ 93　　　　"A sentencing hearing is fundamentally unfair when the proceeding is affected by judicial bias." *People v. Montgomery*, 2023 IL App (3d) 200389, ¶ 28. However, it is not error for a trial court to impose the same sentence on remand. *People v. Raya*, 267 Ill. App. 3d 705, 709 (1994). Section 5-5-4 of the Uniform Code of Corrections (Code) (730 ILCS 5/5-5-4 (West 2024)) includes a prohibition against imposing a more severe sentence on remand after a sentence has been set aside, except under very limited circumstances. *Raya*, 267 Ill. App. 3d. at 709. "However, nothing in the Code mandates a lower sentence on remand." *Id.* " '[W]hen a sentence is vacated on appeal and the cause is remanded for a new sentencing hearing, that action should not be construed as a mandate to the trial judge to impose a lesser sentence on remand.' " *Id.* (quoting *People v. Flanery*, 243 Ill. App. 3d at 759, 761 (1993)). However, this court will order a new sentencing hearing where the trial court's comments "indicate that he or she has predetermined a defendant's sentence before considering the relevant statutory factors" (*People v. Morris*, 2023 IL App (1st) 22035, ¶ 61) or where the comments "reveal that he or she refused to consider the whole range of statutorily permissible sentences" (*id.* ¶ 62).

¶ 94　　　　Here, the imposition of the same sentence on remand alone is insufficient to show judicial bias or a denial of due process. Meanwhile, our review of the record reveals no predetermination of guilt by the trial court.

¶ 95　　　　The trial court heard evidence concerning the probation violation, and as previously discussed, appropriately found the State proved the violation by a preponderance of the evidence. The court then held a sentencing hearing in which it heard evidence and reached a conclusion

defendant should again be sentenced to 12 years' imprisonment. As previously discussed, that sentence was not based on inappropriate factors and was not excessive. That defendant is unhappy with the court's determinations and how it weighed the factors in aggravation and mitigation is insufficient to show the court prejudged his case. Thus, no clear and obvious error occurred because the court's rulings and comments do not establish that it was biased against defendant or denied him due process. See *People v. Cocroft*, 2025 IL App (1st) 231151-U, ¶¶ 70-72 (stating the defendant did not establish trial court bias despite the court expressing displeasure with an appellate court's remand and harsh criticisms of defendant's actions). Accordingly, we find no error or plain error.

¶ 96                              III. CONCLUSION

¶ 97            For the reasons stated, the judgment of the trial court is affirmed.

¶ 98            Affirmed.